UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-23317-CIV-LENARD/GARBER

**CITY PENSION FUND FOR FIREFIGHTERS AND POLICE OFFICERS IN THE CITY OF MIAMI BEACH**, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

**ARACRUZ CELLULOSE S.A., CARLOS ALBERTO VIEIRA, CARLOS AUGUSTO LIRA AGUIAR, and ISAC ROFFE ZAGURY**,

    Defendants.
_____/

## ORDER ON MOTIONS FOR LEAD PLAINTIFF STATUS AND FOR APPROVAL OF SELECTION OF LEAD COUNSEL (D.E. 4, 7, 9, 14)

**THIS CAUSE** is before the Court on the various motions for lead plaintiff status and approval of selection of lead counsel, filed by: (1) Sheet Metal Workers Local No. 80 Pension Trust Fund ("Sheet Metal Workers' Motion," D.E. 4); (2) Laver Participations ("Laver's Motion," D.E. 7); and (3) City Pension Fund for Firefighters and Police Officers in the City of Miami Beach ("Miami Beach's Motion," D.E. 9), on January 26, 2009. On February 12, 2009, Miami Beach filed a response in opposition to both Sheet Metal Workers' Motion and Laver's Motion, ("Miami Beach's Response," D.E. 12). Also on February 12,

2009, Laver filed its response in opposition to both Sheet Metal Workers' Motion and Miami Beach's Motion, ("Laver's Response," D.E. 13).[1]  Instead of a reply, both Miami Beach and Laver subsequently filed on February 23, 2009, a Joint Motion for Appointment as Co-Lead Plaintiffs and Approval of Selection of Co-Lead Counsel ("Joint Motion," D.E. 14).[2][3]  Having reviewed the Motions, the related pleadings, and the record, the Court finds as follows.

I.     **Background**

This case involves a class action complaint against Defendant Aracruz Cellulose S.A. ("Aracruz"), a Brazilian manufacturer of hardwood and paper products, and several of its officers ("Individual Defendants") for violations of § 10(b) and § 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act ("PSLRA"), and Rule 10b-5 promulgated thereunder.  The movants are investors who purchased American Depository Receipts ("ADRs") traded on the New York Stock

---

[1]  Sheet Metal Workers did not file a response to either Miami Beach's Motion or Laver's Motion.

[2]  On March 2, 2009, Sheet Metal Workers filed its response in opposition to the Joint Motion ("Sheet Metal Worker's Response to Joint Motion," D.E. 15), to which Miami Beach and Laver filed a reply on March 13, 2009 ("Joint Reply," D.E. 20).

[3]  The Joint Motion filed by Miami Beach and Laver came after the 60-day statutorily-required deadline for filing motions to appoint as lead plaintiff.  As a result, the Joint Motion is denied as moot and the Court will proceed to consider the timely filed individual motions.  See Netsky v. Capstead Mortgage Corporation, 2000 WL 964935 at *3-4 (N.D. Tex. 2000) (deeming joint motion filed after deadline untimely).  The Court also denies both parties' requests that the Court grant leave to file a reply to the individual motions should the court deny its joint motion.

Exchange, or common stock traded on the Bovespa, from Aracruz during the class period of April 7, 2008, to October 2, 2008. Movants Miami Beach and Sheet Metal Workers are institutional pension fund investors, whereas Laver is a Brazilian investment vehicle established by Josmar Verillo, a Brazilian resident.

Plaintiff Miami Beach filed the class action complaint ("Complaint")[4] on November 26, 2008, alleging Aracruz and the Individual Defendants issued materially false and misleading statements regarding the financial health of Aracruz while they engaged in risky and speculative currency derivative transactions. The Complaint alleges Aracruz entered into undisclosed currency derivative contracts in order to hedge its exposure to the U.S. dollar. According to Plaintiffs, Aracruz concealed the extent of its currency derivative contracts and assured investors that such trading did not pose a financial risk to the company. As the result of a strengthened U.S. dollar, the value of Aracruz's investments plummeted, leading to an eventual mark-to-market loss of over $2 billion, a downgrade of the company's credit rating, the resignation of the company's Chief Financial Officer, and a severe decline in share value. Plaintiffs allege Defendants' misleading statements and concealment of the risky transactions led to artificial inflation of the value of Aracruz securities and resulted in significant loss to investors.

---

[4] Defendant Aracruz has indicated it intends to contest service of process. As a result, Aracruz and Miami Beach have agreed to postpone briefing this issue and moving for entry of default until a lead plaintiff has been appointed. (See Plaintiff's Response to Order to Show Cause, D.E. 25 at 2.) As of March 16, 2009, service of process had not yet been effected on the Individual Defendants in Brazil. (Id. at 2-3.)

On November 26, 2008, Miami Beach published a notice of its class action lawsuit, advising members of the proposed class of their right to move to serve as lead plaintiff on or before January 26, 2009, pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i). (Miami Beach's Motion at 5.) Sheet Metal Workers, Laver, and Miami Beach were the only parties to file timely motions to serve as lead plaintiffs in this action.

## II.   Discussion

### A.   Lead Counsel

The PSLRA sets forth the procedure that governs the appointment of lead plaintiff and states, "[n]ot later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class" and "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 78u-4(a)(3)(A)(i) and (a)(3)(A)(i)(II).

The PSLRA further states that a district court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of the class members (hereafter in this paragraph referred to as the 'most adequate plaintiff')." 15 U.S.C. § 78u-4(a)(3)(B)(i). Specifically, the PSLRA instructs the court to adopt a rebuttable presumption that the most adequate plaintiff "is the person or group of persons that – (aa) has either filed the complaint

4

or made a motion in response to the notice of pendency pursuant to [Section 78u-4(a)(3)(A)(i)]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); see In re Cendant Corp. Litig., 264 F.3d 201, 263 (3d Cir. 2001) (explaining that each candidate for lead plaintiff status must only make a prima facie showing of his or her or its satisfaction of the third requirement).  Thereafter, any other member of the class may rebut the presumption by offering evidence that the presumptively most adequate plaintiff "will not fairly or adequately protect the interests of the class; or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); see also In re Cendant, 264 F.3d at 263-64.  The PSLRA also provides that, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  As all three movants filed timely motions pursuant to the statutorily-required 60-day period, the Court first examines which movant has the largest financial interest and otherwise meets the requirements of Rule 23.

### 1. Financial Interest

In evaluating which movant is the most adequate plaintiff, the amount of financial interest claimed is often considered the "most important factor." See Newman v. Eagle Bldg. Technologies, 209 F.R.D. 499, 502 (S.D. Fla. 2002) (citing Sherleigh Assoc. LLC v. Windmere-Durable Holdings, Inc., 184 F.R.D. 688, 692 (S.D. Fla. 1999); Ehlert v. Singer,

185 F.R.D. 674, 677 (M.D. Fla. 1999)). The evaluation of financial interest is "considered the most significant inquiry, as it effectuates Congress' intent that the PSLRA serve to ensure that the lead plaintiff be the person or group with the interest and ability to control the litigation and to monitor closely the lead counsel." Brustein v. Lampert, Case No. 04-61159 (S.D. Fla. June 15, 2005) (D.E. 27 at 14.) (citing In re Cendant, 264 F.3d at 266; In re Telxon Corp. Sec. Litig., 67 F. Supp. 2d 803, 811-15 n.21 (N.D. Ohio 1999). In determining which movant has the largest financial interest, the Court must consider "(1) the number of shares purchased during the class period; (2) the amount of the investment, and (3) the 'alleged losses.'" Sheet Metal Workers Local 28 Pension Fund v. Office Depot, Inc., 2008 WL 1943955 at *2 (S.D. Fla. 2008) (citing Miller v. Dyadic Int'l, Inc., 2007 WL 4754041 at *2 (S.D. Fla. Dec. 14, 2007)).

In this case, both Laver and Miami Beach assert financial losses significantly greater than those claimed by Sheet Metal Workers. Although the figures are somewhat contested,[5] Laver claims it purchased 12,500 shares during the class period, at a cost of $633,364, with a loss of $303,968. (See Laver's Motion at 5; D.E. 8-2.) Miami Beach claims it purchased 4,000 shares, at a cost of $323,750, with a loss of $280,586. (See Miami Beach's Motion at 10; D.E. 10-4.) In contrast, Sheet Metal Workers claims it purchased 1,600 shares, at a cost

---

[5] In Laver's Response, it asserts it possesses the largest financial interest because it purchased more Aracruz ADRs, expended more funds, and suffered a larger loss during the class period than the others. (Laver's Response at 3.) Miami Beach's Response asserted that Laver's loss was actually $9,736 less than its loss due to Laver's use of incorrect calculation methods. (Miami Beach's Response at 2-3.)

of $130,600, with a financial loss of approximately $113,009. (<u>See</u> Sheet Metal Workers' Motion at 5; D.E. 6-3.) Although Laver has purchased more shares than the other movants and done so at a greater cost, the loss estimates are roughly equivalent with respect to Miami Beach and Laver. As a result, the Court finds Laver possesses the slightly larger financial interest of the two. In addition, because Sheet Metal Works holds the smallest financial interest and failed to respond or oppose the initial motions filed by Miami Beach or Laver, the Court proceeds to examine the remaining factors with respect to Miami Beach and Laver only.[6]

### 2. Rule 23

Pursuant to the third statutory requirement, the Court must next examine whether the lead plaintiff candidate otherwise satisfies the relevant elements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). The two relevant provisions are Rule 23(a)(3) and 23(a)(4); the former requires "typicality," i.e., that a party seeking to represent a class have "claims or defenses [that] are typical of the claims and defenses of the class," FED. R. CIV. P. 23(a)(3), and the latter mandates "adequacy," i.e. that a representative party be able to "fairly and adequately protect the interests of the class," FED. R. CIV. P. 23(a)(4).[7] This inquiry is not as "searching as the one triggered by a motion for

---

[6] Sheet Metal Workers asserts that after recognizing it did not possess the largest financial interest among the competing applicants, it elected not to file a response to the competing motions. (Sheet Metal Worker's Response to Joint Motion at 3.)

[7] The two inquiries "tend to merge" as both look to potential conflicts within the class and whether the movant's claims are sufficiently related to those of the proposed class. <u>See</u>

class certification," but requires the lead plaintiff status to make a prima facie showing of typicality and adequacy. See In re Cendant, 264 F.3d at 263.

### a.    Typicality

"Typicality" exists if a movant demonstrates its claims and those of the proposed class arise from the same event or pattern or practice and are based on the same legal theory. See Sheet Metal Workers Local 28, 2008 WL 1943955 at *2 (S.D. Fla. 2008) (quoting Romberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984)). In other words, the "typicality" requirement is satisfied if a movant's claims "share the same 'essential characteristics as the class at large.'" Miller v. Dyadic Int'l, Inc., 2008 WL 2465286 at *6 (S.D. Fla. April 18, 2008) (quoting Prado-Steinman ex rel. Prado v. Bush, 221 F.3d 1266, 1278-79 n.14 (11th Cir. 2000)). Each of the movants in this case have claims involving the same essential characteristics. All three alleged they purchased common stock or ADRs of Aracruz between April 7, 2008, and October 2, 2008, at prices artificially inflated by materially false and misleading statements by Aracruz and its officers, in violation of federal securities laws. As a result, there is very little to differentiate between the movants claims and both Miami Beach and Laver have made a prima facie showing that their claims are typical of the proposed class.

### b.    Adequacy

"Adequacy" requires the court to examine whether a movant "'has the ability and

---

In re Safeguard Scientifics, 216 F.R.D. 577, 582 n.2 (E.D. Pa. 2003).

incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class.'" In re Cendant, 264 F.3d at 265 (quoting Hassine v. Jeffes, 846 F.2d 169, 179 (3d Cir. 1996)).  Additionally, "[i]n conducting the initial inquiry as to whether the movant with the largest losses satisfies the typicality and adequacy requirements, the court may and should consider the pleadings that have been filed, the movant's application, and any other information that the court requires to be submitted." Id. at 264.

     Laver claims that it can adequately represent the class because "its interests are clearly aligned with the interests of the proposed class, it has retained counsel that is capable and qualified to vigorously represent the interests of the class that it seeks to represent and it has submitted a Certification of Named Plaintiff." (Laver's Motion at 8.)  Laver offers little aside from conclusory statements regarding its adequacy.  In its response, Miami Beach argues that Laver cannot adequately protect the interests of the class because it engaged in an "atypical" trading strategy, failed to provide the Court with evidence of its qualifications, retained counsel improperly, and retained counsel that has failed to independently investigate the claims alleged in the Complaint.  (See Miami Beach's Response at 6-15.)  Specifically, Miami Beach alleges that Laver's claimed losses include "in-and-out" purchases, or shares purchased during the class period but sold prior to its end or any corrective disclosure.  Miami Beach contends that these "in-and-out" purchases distort the claimed loss amount and also present a potential problem with regard to proof of loss causation.  (Id. at 6-9.)

9

Miami Beach also suggests that Laver's largest purchase of Aracruz ADRs came only hours after Aracruz had disclosed massive losses due to its exposure to currency derivative transactions. (Id. at 10.) Miami Beach alleges that on September 26, 2008, Aracruz issued a Form 6-K revealing that its exposure to the derivative instruments had been strongly affected by the instability of the U.S. dollar, the maximum loss may have exceeded internal financial policy, and that its Chief Financial Officer had resigned. (Id. at 11.) Miami Beach states that despite share values dropping from $46 to $37 on over double the daily average trading volume, Laver purchased its largest amount of Aracruz ADRs on that day and continued to purchase additional shares until the end of the class period. (Id.) As a result, Miami Beach argues Laver is subject to unique defenses that would prejudice the entire class. Additional problems cited by Miami Beach include Laver's location in Brazil and the fact that it may have hired counsel from an internet advertisement without performing any due diligence. (Id. at 4.)

Conversely, Miami Beach contends that it is able to adequately represent the proposed class because (1) it is a large institutional investor as a public pension fund that manages assets over $500 million, (2) it has filed the only complaint in this action, (3) it is located within the District and its Board of Directors is in a position to quickly respond to matters, (4) supervision will additionally be provided by a local law firm experienced in supervising securities litigation on behalf of public pension funds, (5) it has an established relationship with proposed lead counsel who has independently investigated the case, and (6) it has a

strong understanding of a fiduciary's role.  (Id. at 15-16; Miami Beach's Motion at 12-14.) In its response, Laver characterizes Miami Beach's failure to provide accurate information in its sworn certification as raising "serious concerns about its ability to adequately protect the interests of the Class within the meaning of Rule 23(a)(4)."  (Laver's Response at 5.) Laver contends that Miami Beach failed to disclose in its sworn certification that it had served as lead plaintiff in In re Electronic Arts Sec. Litig., Case No. 05-1219 (N.D. Cal., within three years of signing the certification.  (Id.)  Miami Beach subsequently filed an amended certification listing the previously omitted litigation.  (D.E. 19-2 at 2.)

The Court finds that the presumption that Laver is the most adequate plaintiff is successfully rebutted by evidence that its atypical trading may expose the class to unique defenses.  It is likely that Laver will be subject to unique defenses involving its ADR purchases after a potential corrective disclosure, affecting issues of reliance and causation. See In re Safeguard Scientifics, 216 F.R.D. 577, 581-582 (E.D. Pa. 2003) (precluding prospective lead plaintiff from representing class where plaintiff increased holdings of shares after public disclosure of fraud and stating "'[w]here it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative.'") (quoting In re Linerboard Antitrust Litig., 203 F.R.D. 197, 211 (E.D. Pa. 2001)); In re Enron Corp. Sec. Litig., 206 F.R.D. 427, 455-56 (S.D. Tex. 2002).  The Court also questions Laver's ability to manage and supervise the litigation as an individual investor located in Brazil. Institutional investors

such as Miami Beach are generally preferred to individual investors for the reason that they are typically better equipped to represent the interests of the class and supervise litigation. See In re Vesta Ins. Group, Inc., Sec. Litig., 1999 WL 34831475 at *8 (N.D. Ala. 1999) (Congress intended "that large institutional investors should be encouraged to serve as class representatives in securities fraud class actions."). Miami Beach has offered evidence that it is equipped to supervise the litigation through monthly meetings of its Board of Directors and the use of local counsel with experience in supervising securities class actions. There is also some advantage to having the lead plaintiff and its decision-makers residing within the District. In addition, Miami Beach's error in detailing its past lead plaintiff status has been corrected through the filing of its amended certification form. The record does not indicate the information was concealed nor does it raise concerns that Miami Beach is a "professional plaintiff." Miami Beach's amended certification indicates that it has only served as lead plaintiff in one action in the last three years. (D.E. 19-2 at 2.) As a result, the Court concludes that while Laver is unable to adequately represent the interests of the class, Miami Beach is able to meet the requirements of Rule 23 and possesses a similar financial interest. Thus, Miami Beach is the most adequate plaintiff of the group and is appointed lead plaintiff in this action.

    **B.**    **Lead Counsel**

The lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Miami Beach has selected as lead

counsel the law firm of Saxena White P.A. In support, Miami Beach states that Saxena White P.A. is a successful and experienced securities class action firm and is currently prosecuting another Brazilian company for similar securities violations related to currency derivative contracts. (Miami Beach's Motion at 15.) Miami Beach also states that it has already researched and located investigators in Brazil who are able to assist with this action. (Id. at 15-16.) The Court has reviewed the resume of the proposed lead counsel and is satisfied that they have the necessary competence, qualifications, and experience to represent the interests of the plaintiff class. Accordingly, it is **ORDERED AND ADJUDGED** that:

1. City Pension Fund for Firefighters and Police Officers in the City of Miami Beach's Motion for Lead Plaintiff Status and Approval of Selection of Lead Counsel (D.E. 9), filed on January 26, 2009, is **GRANTED**.

2. City Pension Fund for Firefighters and Police Officers in the City of Miami Beach is hereby **APPOINTED** Lead Plaintiff.

3. The law firm of Saxena White P.A. is hereby **APPOINTED** Lead Counsel.

4. Sheet Metal Workers Local No. 80 Pension Trust Fund's Motion for Lead Plaintiff Status and Approval of Selection of Lead Counsel (D.E. 4), filed on January 26, 2009, is **DENIED**.

5. Laver Participations's Motion for Lead Plaintiff Status and Approval of Selection of Lead Counsel (D.E. 7), filed on January 26, 2009, is **DENIED**.

6. The Joint Motion for Appointment as Co-Lead Plaintiffs and Approval of

Proposed Co-Lead Plaintiffs' Selection of Counsel (D.E. 14), filed on February 23, 2009, is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 7th day of August, 2009.

*/s/ Joan A. Lenard*
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**