**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO. 08-23317-CIV-LENARD

CITY PENSION FUND FOR FIREFIGHTERS
AND POLICE OFFICERS IN THE CITY OF
MIAMI BEACH, Individually and on Behalf of
All Others Similarly Situated,

               Plaintiff,

v.

ARACRUZ CELULOSE S.A., CARLOS
ALBERTO VIEIRA, CARLOS AUGUSTO
LIRA AGUIAR, and ISAC ROFFE ZAGURY,

               Defendants.

**LEAD PLAINTIFF'S MOTION FOR**
**PRELIMINARY APPROVAL OF SETTLEMENT AND**
**INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS

I.      Introduction ...................................................................................................... 1

II.     The Settlement Should Be Preliminarily Approved ........................................ 3

        A.      The Law Favors and Encourages Settlements ....................................... 3

        B.      The Proposed Settlement is the Result of Non-Collusive, Arm's Length
                Negotiations .......................................................................................... 4

        C.      The Proposed Settlement is Fair, Reasonable and Adequate ................ 5

                1.      Miami Beach's Likelihood of Success at Trial Supports Approval ............ 6

                2.      The Range of Possible Recovery; the Point in the Range of Recovery
                        at Which the Settlement is Fair, Adequate, and Reasonable; and the
                        Complexity, Expense, and Duration of Litigation Support Approval ......... 7

                3.      The Stage of Proceedings at Which the Settlement Was Achieved
                        Supports Approval .................................................................................... 9

        D.      The Plan of Allocation is Fair and Reasonable .................................... 10

III.    The Proposed Class Should be Certified for Settlement Purposes .................. 11

        A.      The Requirements of Rule 23(a) Are Met ............................................ 11

                1.      The Proposed Class is Sufficiently Numerous ......................................... 11

                2.      Questions of Law and Fact are Common to the Class ............................. 12

                3.      Miami Beach's Claims are Typical of the Claims of the Class ................ 13

                4.      Miami Beach will Fairly and Adequately Protect the Interests of the
                        Class ........................................................................................................ 13

        B.      The Requirements of Rule 23(b)(3) are Met ........................................ 15

                1.      Common Questions of Law and Fact Predominate ................................. 15

                2.      A Class Action is Superior to Other Available Methods for the Fair
                        and Efficient Adjudication of this Controversy ...................................... 16

IV.  The Proposed Form and Method of Notice are Adequate ...............................................17

    A.  The Scope of the Notice Program........................................................................17

    B.  The Notice Program Comports with Due Process ...............................................18

V.  Proposed Schedule.........................................................................................................19

VI.  Conclusion ....................................................................................................................20

Pursuant to Federal Rule of Civil Procedure 23, Lead Plaintiff City Pension Fund for Firefighters and Police Officers in the City of Miami Beach ("Miami Beach") respectfully submits this Motion for Preliminary Approval of Settlement reached with Aracruz Celulose S.A., Carlos Augusto Lira Aguiar and Isac Roffé Zagury (collectively, "Defendants" and with Miami Beach, the "Parties").

## MEMORANDUM OF LAW

### I.    Introduction

Miami Beach and Defendants have negotiated, at arms-length and with the assistance of an experienced mediator, a proposed Settlement of all claims brought on behalf of all persons and entities who purchased Aracruz American Depositary Receipts ("ADRs") during the Class Period.  The Settlement provides for a cash payment of $37,500,000, which represents an exceptional recovery for the Class.  Miami Beach is fully informed of the strengths and weaknesses of the action, having had the opportunity to engage in extensive discovery and to consult with highly respected experts before agreeing to the proposed Settlement.  Miami Beach also appreciates the complex and highly uncertain nature of trying this action before a jury, complicated even further by the Brazilian domicile of all fact witnesses, and anticipates that it would face significant hurdles in establishing Defendants' liability and the full amount of the Class's damages if it were to proceed to trial.  Indeed, at all times, Defendants have denied and continue to deny any and all claims of wrongdoing, and any and all liability alleged in connection with such claims.  Moreover, even if the Class were to prevail at trial, Defendants would likely appeal any favorable judgment, delaying and possibly jeopardizing any recovery. Enforcement of any favorable judgment in Brazil against the Defendants is far from certain; in fact, Aracruz has stated publicly that it may be impossible to do so.  Miami Beach fully endorses

1

and respectfully recommends the proposed Settlement, as it believes it is in the best interests of the Class.

The proposed Settlement is contained in the executed Stipulation and Agreement of Settlement and Release dated January 23, 2013 ("Stipulation") and filed contemporaneously with this Motion.  The Stipulation includes several exhibits:

- Exhibit A, the Order Preliminarily Approving Settlement and Providing for Notice of Settlement ("Preliminary Order");

- Exhibit B, the Order and Final Judgment Approving Settlement and Dismissing the Action with Prejudice ("Order and Final Judgment");

- Exhibit C, Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Expenses, and Settlement Fairness Hearing (the "Notice").  The Notice contains the proposed Plan of Allocation ("Plan of Allocation") and Proof of Claim and Release Form ("Proof of Claim"); and

- Exhibit D, Publication Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Expenses, and Settlement Fairness Hearing ("Publication Notice").

Miami Beach seeks entry of the proposed Preliminary Order, which (1) certifies the Class for purposes of Settlement only; (2) preliminarily approves the proposed Settlement, including the Plan of Allocation; (3) approves the form and manner of giving notice of the proposed Settlement to the Class by means of the Notice and Publication Notice; and (4) sets a hearing date for final approval of the Settlement ("Fairness Hearing"), along with a schedule for various deadlines relevant to the Fairness Hearing.  These deadlines include mailing the Notice and publishing the Publication Notice, the submission of all objections or requests for exclusion, and the submission of Proofs of Claim.

As shown below, the proposed Settlement is an excellent result for the Class, as it is exceedingly fair, reasonable and adequate under the governing standards in this Circuit, and should be approved by the Court.

2

## II.    The Settlement Should Be Preliminarily Approved

### A.    The Law Favors and Encourages Settlements

Federal Rule of Civil Procedure 23(e) requires court approval of any proposed settlement of a class action.  There is a long-standing, "strong judicial policy favoring settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  The decision of whether to approve a proposed settlement is within the discretion of the court, and the court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 537 (S.D. Fla. 1988) (King, J.), *aff'd*, 899 F.2d 21 (11th Cir. 1990).  Settlements of class actions particularly warrant this approach:

> This policy has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources and achieve the speedy resolution of justice, for a just result is often no more than an arbitrary point between competing notions of reasonableness.

*Id.* at 538 (internal citations and quotations omitted).  *See also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001).  Indeed, the promotion of fair, adequate, and reasonable settlements is a fundamental tenet of litigation in the federal courts.  *See, e.g., McDermott, Inc. v. Amclyde*, 511 U.S. 202, 211 (1994).  And there is a strong initial presumption that the compromise is fair and reasonable.  *Hernandez v. Tropical Const. & Maintenance Corp.*, 2007 WL 1201143, at *2 (M.D. Fla. Apr. 23, 2007) (*citing Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *Ferguson v. Upscale Saturday Night, Inc.*, 2007 WL 2774196 (M.D. Fla. Sep. 6, 2007).

Approval of a class action settlement is a two-step process: preliminary approval and a subsequent fairness hearing.  *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010).  Preliminary approval "is appropriate where the proposed settlement is the result

3

of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 2012 WL 4173458, at *5 (S.D. Fla. Sep. 19, 2012) (King, J.).  Settlement negotiations that "involve arm's-length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *Id*.  In determining whether to approve a proposed settlement, "the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton*, 559 F.2d at 1330.  Once the court has made a preliminary evaluation of the Settlement's fairness, notice must be given to class members of a formal fairness hearing. *Wrigley*, 2010 WL 2401149, at *2.

Here, as detailed below, the Settlement fully satisfies the standard for preliminary approval.  The indicia of procedural fairness are present here, including arm's-length negotiations by competent counsel overseen by an experienced and well-respected mediator.  Miami Beach respectfully submits that the Settlement is fair and in the best interests of the settlement Class, and should be approved.

### B. The Proposed Settlement is the Result of Non-Collusive, Good Faith, Arm's-Length Negotiations

The $37,500,000 Settlement is an excellent result for the Class, and is the product of extensive good-faith, arm's-length negotiations between Lead Counsel and Defendants' Counsel.  These negotiations were overseen by the Parties' selected mediator, David Geronemus, Esq.,.

The parties conducted a formal, day-long mediation session in New York on October 16, 2012.  Prior to the mediation, the parties exchanged comprehensive mediation statements and replies.  The mediation progressed into the evening, but ultimately the parties were unable to come to mutually agreeable terms at this mediation.  Over the course of the next month, the parties continued their good faith, arm's-length negotiations through the mediator.  These

4

discussions occurred on an almost daily basis.  On November 16, 2012, the parties engaged in a second formal, day-long mediation in New York.  Continuing negotiations into the night, the parties finally reached mutually agreeable terms for the resolution of this action, including the $37,500,000 million cash payment to Class Members in consideration for the release of claims against all Defendants.

At all times, the negotiations were conducted at arm's-length, and the process required all parties and their counsel to assess difficult and uncertain outcomes.  There can be no doubt that the proposed Settlement is the product of serious, informed, non-collusive negotiations. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[M]ediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."); *Holman v. Student Loan Xpress, Inc.*, 2009 WL 4015573, at *5 (M.D. Fla. Nov. 19, 2009) (no fraud or collusion on reaching settlement because the settlement was the product of arm's-length negotiations before a mediator); *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 675 (S.D. Fla. 2006) (settlement reached after attendance at mediation was "the product of good-faith, arm's length negotiations rather than collusion or overreaching by the parties.").

### C.    The Proposed Settlement is Fair, Reasonable and Adequate

The Eleventh Circuit has identified six factors that district courts should consider in determining whether a settlement if fair, reasonable, and adequate:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett v. Behring*, 737 F. 2d 982, 986 (11th Cir. 1984).  With respect to the substance and amount of opposition to the Settlement, Class Members have not yet had the opportunity to review the terms of the Settlement.  Therefore, Lead Counsel will advise the Court of the Class

Members' reaction to the settlement following completion of the notice process, as part of the analysis presented in support of final approval of the Settlement.  A preliminary evaluation of the other considerations demonstrates that the Settlement should receive preliminary approval.[1]

### 1.    Miami Beach's Likelihood of Success at Trial Supports Approval

It has been long-recognized that "[t]he risks of litigation are what ultimately leads to settlement." *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 215 (S.D.N.Y. 1992) (citations omitted).  While Miami Beach was prepared to try this case against Defendants, and remains confident in its ability to ultimately prove its claims, a trial is always a risky proposition. *Gutter v. E.I. Dupont De Nemours & Co.*, 2003 U.S. Dist. LEXIS 27238, at *5 (S.D. Fla. May 30, 2003) ("[T]he risks associated with proceeding to trial in . . . complex securities litigation, particularly the risks associated with establishing materiality, causation and damages favor approval of the [s]ettlement.").  These risks are particularly apparent in this case, where Miami Beach's Section 10(b) claims based on Aracruz's allegedly deficient internal controls and statements regarding its financial condition were dismissed, and all claims against the Company's former Chairman were dismissed.  But even though a portion of Miami Beach's Section 10(b) claim survived the motion to dismiss, Miami Beach still would face risks in litigating this action to a verdict, which would require that it prevail on all matters at class certification, summary judgment and pretrial motions, and trial.  Miami Beach faces particular risks with respect to proving scienter as to each of the Defendants and the full amount of damages sustained by the Class, as well as the difficulty of apportioning liability between the Defendants.

---

[1] Miami Beach respectfully submits that a preliminary analysis of these factors is sufficient to provide the Class with notice of the proposed Settlement. *Authors Guild v. Google, Inc.*, 2009 WL 4434586, at *1 (S.D.N.Y. Dec. 1, 2009) ("In evaluating a proposed class action settlement agreement for preliminary approval . . . a full fairness analysis is neither feasible nor appropriate.").

Miami Beach recognizes the significant risks and uncertainty involved in pursuing its claims through summary judgment, trial, and subsequent appeals. *See, e.g., Robbins v. Kroger Props. Inc.*, 116 F.3d 1441 (11th Cir.), *reh'g en banc denied*, 129 F.3d 617 (11th Cir. 1997) (finding no loss causation and overturning $81 million jury verdict); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011) (overturning jury verdict in favor of plaintiff class and granting judgment as a matter of law in favor of defendants); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 308 (2d Cir. 1979) (reversing $87 million judgment after trial), *cert. denied*, 444 U.S. 1093 (1980). Moreover, Miami Beach is mindful of the issues of proof under, and possible defenses to, the violations of securities laws alleged.

Under these circumstances, the Settlement balances the risks, costs, and delay inherent in complex cases evenly with respect to all parties. Thus, the benefits created by the Settlement weigh heavily in favor of granting the motion for preliminary approval. Miami Beach respectfully submits that, considering the risks of continued litigation and the time and expense which would be incurred to prosecute the action through a trial, the $37.5 million Settlement represents a meaningful recovery that is indisputably in the best interests of the Class.

> 2.   **The Range of Possible Recovery; the Point in the Range of Recovery at Which the Settlement is Fair, Adequate, and Reasonable; and the Complexity, Expense, and Duration of Litigation Support Approval**

"Particularly in class action suits, there is an overriding public interest in favor of settlement [because it] is common knowledge that class action suits have a well-deserved reputation as being most complex." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) (*quoting Cotton*, 559 F.2d at 1331). Part of that complexity lies in the calculation of damages and determining the range of possible recovery, an issue which generally requires expert testimony and invariably leads to a "battle of the experts" at trial.

Miami Beach's experts have calculated the maximum damages attributable to alleged fraud to be approximately $156.3 million and a conservative, minimum estimate (based on alternative price inflation models) to be $76.3 million.  The Defendants have denied and continue to deny that the Class suffered any damages.  Miami Beach acknowledges that at trial, recoverable damages could be significantly less if the Court were to determine that some part of the alleged stock decline was attributable to factors other than the alleged violations of the securities laws as Defendants would surely argue.  The range of possible recovery here is therefore wide and uncertain, a factor which supports the Settlement that secures immediate compensation for the Class.  Furthermore, the $37.5 million settlement represents a recovery of between 24% and 49% of maximum provable damages for the Class.  Miami Beach respectfully submits that this is an excellent result that further supports the fairness, reasonableness, and adequacy of the Settlement, especially given that some of its claims have already been dismissed and that Miami Beach still faces significant hurdles in the prosecution of this action.[2]  *See, e.g.*, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n. 2 (2nd Cir. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008) (in a case in which plaintiffs face significant challenges, "almost any amount could be deemed reasonable[.]").

---

[2] The Settlement significantly exceeds the metrics of the recoveries in comparable securities fraud class action.  *See* Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2011 Review and Analysis*, at 7 (Cornerstone Research 2012) (median settlement as a percentage of estimated damages where damages were between $125 and $249 million was 2.2% in 2011 and 3.6% from 1996-2010); *see also* Comolli, et al., *Recent Trends in Securities Class Action Litigation: 2012 Mid-Year Review Settlements Bigger, But Fewer*, at 29 (NERA 2012) (median ratio of settlement value as a percentage of investor losses was 3.5% in first half of 2012 in cases where investors lost between $100 and $199 million), available at http://www.nera.com/nera-files/PUB_Mid_Year_Trends_08.2012.pdf (last accessed January 22, 2013).  The Settlement also significantly exceeds the median recovery in securities fraud class actions against foreign companies.  *International Legal Comparative Guide to Class & Group Actions 2013*, at 7  (Global Legal Group 2012) (median settlement against foreign companies was $5.2 million in 2011 and $7 million in first half of 2012), available at http://www.nera.com/nera-files/PUB_Patton_ICLG_1012.pdf (last accessed, January 22, 2013).

Moreover, as a whole, the "complexity, expense and duration of the litigation" weigh heavily in favor of approving a settlement. *Bennett*, 737 F.2d at 986. *See also Woodward v. Nor-Am Chem. Co.*, 1996 U.S. Dist. LEXIS 7372, at *61 (S.D. Ala. May 23, 1996) (settlements "alleviate the need for judicial exploration of . . . complex subjects, reduce litigation cost, and eliminate the significant risk that individual claimants might recover nothing."). Miami Beach's claims involve numerous complex legal and financial issues, including the valuation and interpretation of extremely complicated, foreign-language currency derivative instruments. These issues alone would require extensive expert discovery and testimony, adding considerably to the complexity, expense, and duration of the action. In addition, the costs and risks associated with litigating this action to a verdict would be high, and the process would require many hours of the Court's time and expenditure of its resources. This process would only be complicated by the fact that all fact witnesses are in Brazil, and therefore beyond the subpoena power of the Court. The Settlement enables the Class to swiftly recover a meaningful sum of money in circumstances where it would otherwise not recover for years, if at all.

### 3. The Stage of Proceedings at Which the Settlement Was Achieved Supports Approval

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact. It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation. At a minimum, the court must possess sufficient information to raise its decision above mere conjecture." Newberg & Conte, NEWBERG ON CLASS ACTIONS §11.45 (3d ed. 1992). *See also Woodward*, 1996 U.S. Dist. LEXIS 7372, at *64. The volume and substance of Miami Beach's knowledge of this action is unquestionably adequate to support the Settlement. Miami Beach has litigated this action for over four years, passing a significant

hurdle by surviving the Defendants' motion to dismiss, and has entered into the Settlement with

a clear understanding of the strengths and weaknesses of his claims based on, *inter alia*: (i) the

review and analysis of Aracruz's public filings with the SEC and the Brazilian SEC; (ii) review

and analysis of news articles, press releases, announcements, and analysts' reports relating to

Aracruz; (iii) research of the applicable law with respect to the claims asserted in the action and

the potential defenses thereto; (iv) review and analysis of tens of thousands of non-public,

internal company documents, and other non-public third-party documents; (v) extensive

consultation with damages, economics, and financial experts; (vi) consultation with professional

investigators; (vii) two formal mediation sessions with an experienced and distinguished

mediator.

> **D.      The Plan of Allocation is Fair and Reasonable**

"An allocation formula need only have a reasonable, rational basis, particularly if

recommended by experienced and competent class counsel."  *In re American Bank Note*

*Holographics, Inc.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001) (internal quotations omitted).

The court's "principal obligation is simply to ensure that the fund distribution is fair and

reasonable."  *Id.* (*quoting Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 964 (3d Cir. 1983)).

Here, the proposed Plan of Allocation[3] was drafted by Lead Plaintiff's damages and loss

causation expert, Chad Coffman, who has significant experience in drafting plans of allocation,

and was approved by Lead Counsel.  It is consistent with Coffman's damages and loss causation

calculations, and takes into account the relative strengths and weaknesses of the claims asserted

in the Complaint.  It provides a reasonable, rational basis for Class Members to recover their pro

rata damages based upon the dates on which they purchased or sold Aracruz ADRs.  The

proposed Plan of Allocation also prohibits Class Members from receiving a windfall by limiting

---

[3] The proposed Plan of Allocation is found in the Notice, which is attached as Exhibit C to the Stipulation.

recovery only to those Class Members who suffered actual losses.  The proposed Plan of Allocation is fair and reasonable, and should be approved.  *See Danieli v. IBM Corp.*, 2008 WL 6583144, at *5 (S.D.N.Y. Nov. 16, 2009) (approving plan of allocation where it "is rationally related to the relative strengths and weaknesses of the respective claims asserted" and falls within the range of possible approval).

## III.   The Proposed Class Should be Preliminarily Certified for Settlement Purposes

One of the court's duties in reviewing a proposed settlement of a class action is to determine whether the action may be maintained as a class action under Fed. R. Civ. P. 23.  *See Amchem Prods. v. Windsor*, 521 U.S. 591 (1997).  It is also "well established" that "[a] class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue."  *Checking Account Overdraft Litig.*, 2012 WL 4173458, at *2 (*quoting  Borcea*, 238 F.R.D. at 671).  Under the terms of the Settlement, the Parties have agreed, for the purposes of the Settlement, to certification of a class.[4]

Rule 23(a) sets forth four prerequisites to class certification, which are: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy. In addition, the class must meet one of the three requirements of Rule 23(b).  *See* Fed. R. Civ. P. 23.  In general, Courts have followed a "policy of liberal construction of Rule 23 in the context of federal securities fraud actions."  *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 687, 693 (N.D. Ga. 2002).  Miami Beach submits that the Class satisfies each of the requirements as set forth below.

### A.    The Requirements of Rule 23(a) Are Met

#### 1.    The Proposed Class is Sufficiently Numerous

---

[4] In the litigation, Defendants have disputed that Miami Beach has satisfied Rule 23's typicality and predominance requirements.  Under the terms of the Settlement, however, Defendants have agreed, for the sole purpose of settlement and without adjudication of the merits, to certification of a class.

The Class meets the numerosity requirement of Rule 23(a).  First, the number and location of putative class members is such that it is impracticable to join all of the Class Members in one lawsuit.  *See In re Miller Indus. Sec. Litig.*, 186 F.R.D. 680, 685 (N.D. Ga. 1999) (plaintiffs "need only show that it would be extremely difficult or inconvenient to join all members of the class").  Throughout the Class Period, Aracruz ADRs were actively traded on the NYSE, and the Company has reported in their filings with the SEC that there were millions of outstanding ADRs.  Thus, Miami Beach believes the putative class comprises thousands of beneficial holders, which satisfies the numerosity requirement.  *See Theragenics*, 205 F.R.D. at 694 (numerosity is "generally presumed when a claim involves nationally traded securities").

### 2.      Questions of Law and Fact are Common to the Class

The commonality requirement is met because substantial questions of law and fact are common to all Class Members (*e.g.*, whether statements made by Defendants to the investing public during the Class Period allegedly misrepresented material facts about the nature and extent of Aracruz's currency derivatives and whether the Defendants acted knowingly or recklessly in issuing these statements).  *See Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 491 (S.D. Fla. 2003) (finding commonality requirement to be met where, "like many other similar securities cases in this Circuit," the allegations involved a "unified scheme to defraud investors through misrepresentations and omissions of information and because several common questions of law exist.").  Nothing in Miami Beach's analysis of the claims and defenses in this case suggests that there are substantial differences between the interests of the Class Members.  Further, Class Members' claims all spring from the same common source.  Therefore, the commonality requirement is met.

### 3.        Miami Beach's Claims are Typical of the Claims of the Class

Rule 23(a)(3) requires that the proposed representative's claims be "typical" of the claims of the class.  Here, Miami Beach's claims are "typical" of other Class Members' claims because they arise out of the same alleged conduct.[5]  *See, e.g.*, *Theragenics*, 205  F.R.D. at 695 (finding typicality to be satisfied where each class member and proposed class representative alleged securities law violations and purchased stock at prices inflated by defendants' misrepresentations).  The Rule 23(a) typicality requirement ensures that the class representative has the same interests as the class.  That is, "typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large."  *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008).

Miami Beach's claims against Defendants are typical because, like other members of the Class, its claims arise from the same events and theories – that Defendants allegedly misrepresented and omitted material facts regarding both Aracruz's currency hedging policy as well as the extent of the Company's currency hedges.  Moreover, the alleged damages sustained by Miami Beach and other members of the Class arise from the same course of misconduct.  Accordingly, Miami Beach satisfies the typicality requirement.  *See Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985) ("[A] strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences.").

### 4.        Miami Beach will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4)'s adequacy requirement is met in this action because Miami Beach will fairly and adequately protect the interests of the Class. The adequacy requirements may be divided into two separate prongs: (i) whether plaintiffs have interests antagonistic to those of the

---

[5] The Supreme Court has recognized that the commonality and typicality analyses "tend to merge."  *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n. 13 (1982).

rest of the class; and (ii) whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987), *cert. denied,* 485 U.S. 959 (1988).

Miami Beach is ideally suited to serve as Class Representative. This Court has previously recognized that "[i]nstitutional investors such as Miami Beach are generally preferred . . . for the reason that they are typically better equipped to represent the interests of the class and supervise litigation." Order of August 7, 2009 at 11-12 (Dkt. No. 27); s*ee also In re HealthSouth Corp. Sec. Litig.*, 261 F.R.D. 616, 628 (N.D. Ala. 2009) (institutional investors are "the type of large investor Congress intended should represent injured investors in class actions.").

Further, Miami Beach's interests do not conflict with those of any member of the Class. A party's interests will only be deemed antagonistic to those of the rest of the class if the conflict is fundamental - going to the specific issues in controversy. 1 Newberg & Conte, NEWBERG ON CLASS ACTIONS §3.25 at 3-319 to 141; §3.26 at 3-143 to 144 (3d ed. 1992). Here, there is no question of the lack of adverse interests; indeed, given that Miami Beach's claims are identical to other Class Members and it is subject to no unique defenses, it is difficult to identify any way in which its interests could be adverse to those of the Class.

Miami Beach has also retained counsel who are qualified, experienced and able to conduct the litigation. Lead Counsel have considerable experience, having successfully prosecuted many securities and complex class actions in courts throughout the United States. *See* Firm Resume of Saxena White P.A. (attached to this Motion as Ex. A). Further, prior to reaching the Settlement, Lead Counsel undertook an extensive investigation, drafted a detailed amended complaint, partially surmounted the Defendants' various motions to dismiss, fully briefed the motion for class certification, engaged in two formal, day-long mediation sessions,

engaged in extensive and highly technical discovery, and closely consulted with experts in the fields of economics, finance, derivatives operations, and damages.  By the time settlement discussions began, Lead Counsel were clearly informed of the strengths and weaknesses of Miami Beach's claims and were able to use this knowledge to engage in a rigorous, lengthy negotiation process with Defendants. Lead Counsel are skilled and experienced litigators who are clearly qualified, experienced, and generally able to conduct the proposed litigation.  Thus, the adequacy requirement is also met.

The Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy are fully met in this action.

### B.      The Requirements of Rule 23(b)(3) are Met

In addition to satisfying the criteria of Rule 23(a), a party seeking class certification must also satisfy one of the three subparts of Rule 23(b).  Pursuant to Rule 23(b)(3), the Court must consider: (1) whether issues of law or fact common to class members predominate over questions affecting only individual members; and (2) whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1.      Common Questions of Law and Fact Predominate

As demonstrated above, this litigation involves both questions of law and fact common to the Class.  For predominance, "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Theragenics*, 205 F.R.D. at 697.  However, "issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Kerr v. City of W. Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989).  Miami Beach proffers that there are no significant – let alone

predominant – individual issues in this case. Indeed, it is difficult to discern any liability issues not common to all Class Members. Where, as here, Class Members are subject to the same alleged misrepresentations and omissions, and it is alleged that Defendants' misrepresentations were part of a common course of conduct, common questions predominate. If Miami Beach and each Class Member were to bring individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability. *See In re BellSouth Corp.*, 2006 WL 870362, *4 (N.D. Ga. April 3, 2006) (finding the class action to be superior method for litigating a federal securities action because "prosecution by individual shareholders would be prohibitive from both the individual plaintiff's and the court's perspectives.").

> **2. A Class Action is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Controversy**

The class action device is also the superior method for resolving the claims in this action. Courts have long recognized that the class action is not only a superior method, but also may be the only feasible method to fairly and efficiently adjudicate a controversy involving a large number of purchasers of securities injured by violations of the securities law. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (noting that "[m]ost of the plaintiffs would have no realistic day in court if a class action were not available").[6]

Further, certification of the Class for settlement purposes is the superior method for resolving the claims of Miami Beach and the Class. Without the settlement class device, the Defendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to agree to the Stipulation. Moreover, certification of the class for settlement purposes

---

[6] The alternative to certifying the class for settlement purposes would be to unleash hundreds, if not thousands, of individual actions into the judicial system, which could result in varying adjudications of liability, or risk that many Class Members would be unable to seek redress because they could not afford to proceed on an individual basis. The cost and expense of such individual actions, when weighed against the individual recoveries obtainable, would be prohibitive.

will allow the Settlement to be administered in an organized and efficient manner.  In light of the foregoing, all of the requirements of Rules 23(a) and 23(b)(3) are satisfied, and thus, the Court should certify this Class for settlement purposes.[7]

## IV.   The Proposed Form and Method of Notice are Adequate

### A.   The Scope of the Notice Program

Lead Counsel has selected the Garden City Group, Inc. ("GCG") to serve as the Claims Administrator for the proposed Settlement.  GCG has substantial experience in serving as claims administrator, and has done so for other settlements in this District.  *See, e.g., Wm. Wrigley Jr.*, 2010 WL 2401149, at *6; *Borcea*, 238 F.R.D. at 670.  In connection with the distribution of the Notice,[8] GCG will receive from Aracruz's transfer agent the names and addresses of all holders of Aracruz ADRs during the Class Period.  GCG will make an initial mailing of the Notice and Proof of Claim  to these Class Members, as well as thousands of nominees contained in GCG's proprietary database not later than 14 days after the entry of the proposed Preliminary Order.

GCG will also publish the Publication Notice, which provides a summary of the action and the proposed Settlement, and also explains how to obtain the more detailed Notice and Proof of Claim.[9]  The Publication Notice will be published in *Investor's Business Daily*, no later than 14 days after the entry of proposed Preliminary Order (subject to Court approval).  Lead Counsel has also instructed GCG to maintain a website, at www.aracruzadrlitigation.com. This website will provide more information on the Settlement, including copies of the Notice, Proof of Claim, and Stipulation, as well as important dates relating to the Settlement and Fairness Hearing.

---

[7] Additionally, Rule 23(g)(1)(A) states that, "a court that certifies a class must appoint class counsel." Fed. R. Civ. Pr. 23(g)(1)(A). Lead Counsel satisfies the requirements of Rule 23(g) and should be appointed as Class Counsel. As discussed above, Saxena White P.A. has fairly and adequately represented the Class, and will continue to do so. Proposed Class Counsel is knowledgeable about the applicable law, are experienced in handling class actions, have performed substantial work in vigorously pursuing the Class' claims here, and have committed substantial resources to representing the Class. *See* Fed. R. Civ. Pr. 23(g)(1)(B).
[8] The Notice (including Proof of Claim and Plan of Allocation) is attached as Exhibit C to the Stipulation.
[9] The Publication Notice is attached as Exhibit D to the Stipulation.

**B.      The Notice Program Comports with Due Process**

The threshold requirement concerning class notice is whether the means employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the class members' rights to opt out or object.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).  The mechanics of the notice process are left to the discretion of the court, subject only to the broad "reasonableness" standards imposed by due process.  In this Circuit, it has long been the case that a notice of settlement will be adjudged satisfactory if it reaches the parties affected and conveys the required information.  *In re Nissan Motor Corp. Antitrust Litig.*, 552 F. 2d 1088, 1104-05 (5th Cir. 1977) (the class members' "substantive claims [must] be adequately described [and] the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment.").

The proposed Notice and Publication Notice have been carefully drafted to contain all necessary information.  They are substantially similar in content and form to the models published by the Federal Judicial Center.[10]  All of the information is provided in a format that is easily accessible to the reader.  The Notices clearly advise recipients of their legal rights and obligations, including that they can object to any portion of the Settlement, exclude themselves from the Settlement, or submit an attached Proof of Claim to share in their pro rata portion of the Settlement.  Contact information for both Lead Counsel and GCG is provided, as well as a toll-free  number and website for the recipient if there are any further questions.

Lead Counsel are employing the traditional methods for notifying Class Members of the Settlement: notification by mail and by publication in a national newspaper focusing on

---

[10] The FJC model is available at http://www.fjc.gov/public/pdf.nsf/lookup/ClaAct13.pdf/$file/ClaAct13.pdf (last visited, January 22, 2013).  The Publication Notice is also substantially similar in form and content to the FJC's publication notice model, available at http://www.fjc.gov/public/pdf.nsf/lookup/ClaAct14.pdf/$file/ClaAct14.pdf.

investors, as well as maintenance of a settlement website. Notice programs such as this have been approved in a multitude of class action settlements. *See, e.g., Checking Account Overdraft Litig.*, 2012 WL 4173458, at \*\*6-7 (approving notice to be mailed to potential class members and to be published in newspapers, and directing a settlement website to be maintained); *Borcea*, 238 F.R.D. at 670-71 (notice consisted of mailings to class members, publication in newspapers, and settlement website); *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 550-51 (N.D. Ga. 1992) (notice by mail to class members who could be identified and by publication to those who could not be identified satisfies due process requirements).

Upon notification of the Settlement, Class Members will have three choices: (1) submit a Proof of Claim to share in their pro rata share of the Settlement proceeds; (2) exclude themselves from the Settlement by "opting out" of the Class, in which case they will not participate in the Settlement recovery and will retain their individual claims against the Defendants; or (3) object to the Settlement or any of its terms (including the Plan of Allocation and the award of attorneys' fees and expenses). The notice program advises that to participate in the Settlement, Class Members must submit a Proof of Claim within the time specified in the Preliminary Order. Class Members who wish to exclude themselves from the Settlement must submit a timely request for exclusion. Class Members who wish to object to the Settlement must file and serve a notice of their intention to appear and object. Objectors can submit an opposition to the Settlement and can appear at the Fairness Hearing. This Court should find that the notice procedures are reasonably calculated to provide sufficient notice of the Settlement to the Class.

## V.    Proposed Schedule

Lead Counsel respectfully submits the following procedural schedule for the Court's review and approval, which summarizes the deadlines in the proposed Preliminary Order:

| Event | Proposed Deadline |
|-------|-------------------|
| Mailing of Notice<br>*See* Preliminary Order ¶9 | 14 days after entry of Preliminary Order |
| Publication of Publication Notice<br>*See* Preliminary Order ¶9 | 14 days after entry of Preliminary Order |
| Notice Posted on Settlement Website<br>*See* Preliminary Order ¶9 | 14 days after entry of Preliminary Order |
| Submission of Motion for Final Approval of Settlement and Attorneys' Fees and Expenses<br>*See* Preliminary Order ¶7 | 35 days prior to the Fairness Hearing |
| Submission of Requests for Exclusion<br>*See* Preliminary Order ¶13 | 21 days prior to the Fairness Hearing |
| Submission of Objections<br>*See* Preliminary Order ¶14 | 21 days prior to the Fairness Hearing |
| Submission of Reply in Support of Final Approval and Attorney's Fees and Expenses<br>*See* Preliminary Order ¶7 | 7 days prior to the Fairness Hearing |
| Submission of Proofs of Claim<br>*See* Preliminary Order ¶17 | 90 days after the Fairness Hearing |
| Fairness Hearing<br>*See* Preliminary Order ¶6 | 100 days after entry of the Preliminary Order[11] |

## VI.   Conclusion

Based on the foregoing, Miami Beach respectfully requests that the Court enter the proposed Preliminary Order, granting: (i) preliminary approval of the Settlement; (ii) provisional certification of the Class for purposes of the Settlement; (iii) provisional appointment of Lead Plaintiff Miami Beach as Class Representative and Saxena White P.A. as Class Counsel; (iv) approval of the form and manner of giving notice of the proposed Settlement to the Class; and (v) a time and date for the Fairness Hearing, to consider final approval of the Settlement and related matters.  Pursuant to Local Rule 7.1(c), Miami Beach has conferred with Defendants, who consent to the relief requested herein.

---

[11] 28 U.S.C. § 1715 requires Aracruz to notify certain federal and state officials of the proposed Settlement within 10 days from the date of filing this Motion.  Subsection (d) requires the Court to wait 90 days from the date these officials are served to give final approval to the proposed Settlement.  In order to comply with the statute, Lead Counsel respectfully requests that the Court schedule the Fairness Hearing to occur at least 100 days, and no later than 120 days, from the date the Settlement is preliminarily approved, subject to the Court's convenience.

Dated:  January 24, 2013

Respectfully submitted,

**SAXENA WHITE P.A.**

*/s/ Joseph E. White III*
Maya Saxena
Joseph E. White, III
Brandon T. Grzandziel
2424 North Federal Highway
Suite 257
Boca Raton, FL 33431
T:  (561) 394-3399
F:  (561) 394-3382

*Lead Counsel for Lead Plaintiff City*
*Pension Fund for Firefighters and Police*
*Officers in the City of Miami Beach*

21

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 24, 2013, I filed the foregoing with the Court's

CM/ECF System, which will send a notice of filing to all registered users.

*/s/ Joseph E. White, III*
Joseph E. White, III
